UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

FURGUS WILSON,

Plaintiff,

Case No. 1:05-cv-00324

v.

Hon. William E. Smith

STILES MACHINERY, INC.

Defendant.

---

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Defendant Stiles Machinery, Inc., moves for summary judgment under Fed. R. Civ. P. 56(c) and asks this Court to dismiss Plaintiff's claims with prejudice. There are no genuine issues of material fact and Stiles Machinery is entitled to judgment as a matter of law. In support of this motion, Stiles Machinery relies on the attached Memorandum of Law and Statement of Undisputed Facts.

Dated: June 7, 2006

Michael F. Kraemer (#6751)
HINCKLEY, ALLEN & SNYDER LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (facsimile)
Co-Counsel for Defendant

Paul T. Sorensen (Pro Hac Vice)
WARNER, NORCROSS & JUDD LLP
900 Fifth Third Center
111 Lyon Street, N.W.
Grand Rapids, MI 49503-2487
(616) 752-2000
(616) 222-2135 (facsimile)
Counsel for Defendant

**CERTIFICATION**

Thomas J. Cronin, Esq.
Gunning & LaFazia, Inc.
56 Pine Street – 7th Floor
Providence, Rhode Island 02903

Jeffrey D. Pollack, Esq.
Mintz & Gold LLP
470 Park Avenue So. – 10th Floor – North
New York, New York 10016

I certify that I mailed a copy of the this motion to counsel of record, as set forth above, on June 7, 2006.

______________________________

#721493v1 (58865/126487)

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

FURGUS WILSON,

Plaintiff, Case No. 1:05-cv-00324

v. Hon. William E. Smith

STILES MACHINERY, INC.

Defendant.

______________________________/

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS


INTRODUCTION .......... 1

FACTS .......... 1

ARGUMENT .......... 8

OVERVIEW OF THE FLSA .......... 8

Wilson's Job Duties Meet All Of The Elements Of An Exempt Administrative Employee .......... 9

Wilson's Primary Duty Was Nonmanual Work Directly Related To Stiles's Business Operations .......... 10

Wilson's Occasional Performance of Manual Labor Does Not Change His Exempt Status .......... 10

Wilson Exercised Discretion And Independent Judgment. .......... 17

Wilson's Claim is Barred, in Part, by the Statute of Limitations .......... 20

CONCLUSION .......... 21

## INTRODUCTION

Plaintiff Furgus Wilson was a Project Manager for Defendant Stiles Machinery from 1997 until 2004. As a Project Manager, Wilson was an essential member of Stiles's management team. Wilson was required to spend extended periods of time at customer sites because he was Stiles's on-site representative during the delivery, installation, and start-up of complex manufacturing systems sold by Stiles. As Wilson himself has explained, his main job function was "managing multi-million dollar projects at various customer sites." Everyone, including Stiles's customers, understood that Wilson was Stiles's on-site management representative.

Like all of Stiles's management employees, Wilson was paid a salary. He now claims, however, that he was also entitled to overtime compensation. He is wrong. Wilson was not entitled to overtime compensation because he was an exempt administrative employee under the Fair Labor Standards Act. The undisputed evidence in this case shows that Wilson's work as Project Manager met the exemption requirements. The Department of Labor has not only recognized that these are the duties of an exempt administrative employee, but has in fact identified Project Manager as a specific example of an exempt administrative employee. Because there are no genuine issues of material fact, Stiles is entitled to a judgment as a matter of law.

## FACTS

Stiles Machinery, Inc.

Stiles is a distributor of woodworking and panel-processing machinery and equipment. (**Exhibit A,** Deposition of Chuck VanLoon at 18-19.) Stiles's principal customers are furniture makers, kitchen-cabinet makers, store-fixture manufacturers,

and other woodworking businesses. *Id.* Stiles sells machinery, software, and production equipment for a wide variety of woodworking applications. *Id.*

Wilson's Employment History and Job Duties

Stiles employed Wilson from 1997 until 2004. While at Stiles, Wilson was paid an annual salary that fluctuated between $73,000 and $76,000. (**Exhibit B,** Affidavit of Larry Hart at ¶ 5.) During his entire career at Stiles, Wilson's job title was Project Manager. (**Exhibit C**, Deposition of Furgus Wilson at 22.) Wilson's duties were laid out in his job description (which he signed, agreeing that he both read and discussed the description with his supervisor). (Wilson Deposition Exhibit 1.) The job description provided that Wilson was responsible for:

- Management of project installations and follow-up to achieve maximum customer satisfaction;
- Maintaining good customer relations;
- Managing contractual agreements;
- Coordinating installation technicians;
- Supporting the objectives of Stiles; and
- Giving monthly progress reports to the National Service Manager.

*Id.* Wilson does not dispute that these were his job duties. (Wilson Dep. at 104-109.) In fact, Wilson has acknowledged that, while at Stiles, he did the work of a Project Manager (Wilson Dep. Exhibit 2) and that "[m]anaging multi-million dollar projects at various customer sites is my main job function." (Dep. Exhibit 3.)

As a Project Manager, Wilson was an on-site manager and coordinator for the delivery, installation and start-up of Stiles's equipment. (Wilson Dep. at 104-109.)

When Stiles sold woodworking machinery or panel-processing equipment to a customer, Stiles obviously had a vested interest in making sure that the equipment was delivered, installed and started properly. (Affidavit of Larry Hart at ¶14.) In essence, Stiles wanted to make sure that the equipment was up and running and that the customer was satisfied. (VanLoon Dep. at 18-19.) Wilson would manage and oversee the installation of multiple machine lines at customer sites, and deal with any problems that might come up. (Affidavit of Larry Hart at ¶9.) He would then report back to Stiles regarding these problems and the overall status of the installation. (Wilson Dep. at 53.) Wilson would spend months (or sometimes even more than a year) at a particular customer's site to insure proper installation and performance of Stiles's products. (Wilson Dep. at 87.)

Wilson's Primary Duty Was To Manage And Coordinate Project Installations On-Site

Wilson's primary duty was to manage and coordinate project installations on-site. (Wilson Dep. at 104-109; VanLoon Dep. at 34-35; **Exhibit D,** Deposition of Don LeBlanc at 13.) Wilson was responsible for developing, coordinating, and implementing an installation timeline with input from the customer, Stiles's sales engineers, relevant product managers, and service management. (Wilson Dep. at 106.) Wilson also developed a basic plan for executing and controlling the project, including establishment of a chain of command. (Wilson Dep. 104-109; Dep. Exhibit 1.) This plan would include manpower lists that reconciled with the installation timeline. (Wilson Dep. at 104-109; Dep. Exhibit 1.) Wilson's installation duties also included studying contract documents to understand the equipment and relevant contractual obligations. (Wilson Dep. at 104-

109; Dep. Exhibit 1.) Don LeBlanc, Stiles's manager of special projects, described these on-site duties as follows:

> His role at [the customer] was the on-site project manager. His role was to supervise the installation of lines of equipment. He was also responsible for scheduling any technicians that would be required to fulfill that role, that job. His role also was to report on the success or lack of success in the installation.

(LeBlanc Dep. at 15.) Wilson spoke, met, and interacted with the customer on a regular basis as the face of Stiles. (Affidavit of Larry Hart at ¶ 13.) There were frequent meetings where Wilson actively participated and tended to customer needs and concerns. *Id.*

Wilson's Duties Included The Exercise Of Discretion And Independent Judgment

Wilson was given considerable discretion and independence to develop strategies and plans to address these problems, as would be expected as Stiles's main customer contact. (Affidavit at Larry Hart at ¶11.) Wilson would manage and coordinate a team of service technicians that was tasked to solve problems during the installation process and initial operating period of the equipment. (Wilson Dep. at 28-29.) Wilson was responsible for reviewing the personnel requirements and moving personnel in or out of the project as necessary. (Wilson Dep. at 105; Dep. Exhibit 1.) Wilson even admitted that he was responsible for "supervising technicians" in his work experience as Project Manager for Stiles. (Dep. Exhibit 3.)

Wilson also occasionally worked side-by-side with his technicians on the servicing and installation of the equipment. Of course, working side-by-side with technicians on installation and servicing was sometimes essential to get the job done. But physically servicing and installing the machines was not Wilson's primary job duty.

(LeBlanc Dep. at 15-16; Wilson Dep. at 104-109; Dep. Exhibit 1.) Indeed, Wilson himself admitted that managing projects at customer sites was his main job function. (Wilson Dep. Exhibit 3). Stiles specifically explained to Wilson that he should not be spending too much time adjusting or repairing the machines, which was the job of Stiles's service personnel, known as Field Service Representatives. (VanLoon Dep. Exhibit 1; LeBlanc Dep. Exhibit 1.) In fact, Don LeBlanc, manager of special projects for Stiles, told Wilson that he should rely on Field Service Representatives, and that he should bring them in whenever work needed to be done on a machine. (*Id.*; LeBlanc Dep. at 27.) LeBlanc told the customer and the service team that Wilson was "the onsite coordinator and not the primary technician." (LeBlanc Dep. Exhibit 1) (Emphasis added.)

As Stiles's front-line manager and representative at customer sites, Wilson was also responsible for customer relations—a job duty that entailed the exercise of considerable independence and discretion. (Wilson Dep. at 104-109.) Wilson was in regular contact with the customers' representatives and was Stiles on-site management representative for all purposes. (Wilson Dep. at 104-109; Dep. Exhibit 1; **Exhibit E**, Affidavit of Bob Guadagnoli at ¶¶ 4-5; **Exhibit F**, Affidavit of Tom Anderson at ¶¶ 4-4.) In this role, Wilson:

- Coordinated project meetings with the customer (Wilson Dep. at 104-109; Dep. Exhibit 1);
- Kept the customer informed of his responsibilities, installation schedule and whatever additional information could be useful to maintain a positive and proactive customer relationship (Wilson Dep. at 104-109; Dep. Exhibit 1; VanLoon Dep. at 34);

- Maintained contacts with project salesmen and the National Service Manager, to inform them about project progress and new business opportunities with the customer. (Wilson Dep. at 104-109; Dep. Exhibit 1.)

Chuck VanLoon, a service manager with Stiles, described Wilson's duties as follows:

> Q. Okay. What was he doing specifically in that role?
>
> A. In that role?
>
> Q. Yes. On-site manager.
>
> A. Okay. Having meetings with the customer, management, writing weekly reports that would go to myself and other management at Stiles and management at [the customer], assist with the scheduling of services that needed to be performed at [the customer] and communicate that to the service office in Grand Rapids so that we could react accordingly, assist the customer with parts issues or concerns that they would have, make judgment calls on site whether an issue that the customer may have experienced with a machine was truly a warranty problem or a non-warranty problem.

(VanLoon Dep. at 34-35.)

<u>Wilson's Work At Monarch And KraftMaid</u>

Wilson's work at two customer sites is particularly illustrative of his responsibilities as Project Manager. Wilson worked at Monarch Industries, a woodworking manufacturer located in Rumford, Rhode Island, from November 2003 to October 2004. While at Monarch, Wilson coordinated technicians who were required to complete installation and service-related activities. (Affidavit of Larry Hart at ¶ 7.) Wilson also prepared regular reports regarding the overall status of the machines at KraftMaid. (Affidavit of Larry Hart at ¶ 10.) Wilson reported on problems and suggested solutions. *Id.* He did what Stiles referred to as "commissioning" of machine lines, which

is an overall verification that the machine line functions properly and produces the appropriate finished products. (Affidavit of Larry Hart at ¶ 9.)

Wilson also worked at KraftMaid Cabinetry, Inc., a leading manufacturer of built-to-order cabinetry located in Middlefield, Ohio, from December 2001 to November 2003. (Affidavit of Tom Anderson at ¶¶ 3-4.) At KraftMaid, Wilson performed similar functions including managing the installation project, various service-related activities, coordinating technicians, reporting on problems, suggesting solutions, and customer relations. (**Exhibit G**, Affidavit of Chuck VanLoon at ¶¶ 5-10.)

Wilson was also in charge of customer support on these projects at Monarch and KraftMaid. (Affidavit of Larry Hart at ¶ 12; Affidavit of Chuck VanLoon at ¶ 11.) Consistent with his job description, he coordinated project meetings with the customer and kept the customer informed of installation schedules, responsibilities, and any other information useful to maintain a positive and proactive customer relationship. (Affidavit of Tom Anderson at ¶ 6; Affidavit of Bob Guadagnoli at ¶ 6.) Specifically, Wilson was the primary contact between Stiles, the customer, and installation personnel. Wilson was the face of Stiles on these job sites. (Affidavit of Tom Anderson at ¶ 5; Affidavit of Bob Guadagnoli at ¶ 5.) These duties were consistent with the job description provided to the Wilson. (Wilson Dep. Exhibit 1.)

Based on this record evidence, it is clear that Wilson was an exempt administrative employee, who was never entitled to overtime compensation under the FLSA.

## ARGUMENT

Overview of the FLSA

As a general rule, the FLSA requires employers to compensate employees who work over 40 hours in a week "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). The FLSA provides broad exemptions from the overtime requirement for those employees who serve in a "bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). *See generally Reich v. John Alden Life Insurance Co.*, 126 F.3d 1 (1st Cir. 1997) (affirming summary judgment for the employer based on the administrative exemption).

Wilson was an exempt administrative employee. Under the applicable regulatory analysis, an administrative employee is exempt from the overtime provisions if:

> (1) the employee is paid more than $250 per week;
>
> (2) the employee's primary duty consists of office or non-manual work directly related to the management policies or general business operations of his employer or his employer's customers, and
>
> (3) the employee customarily and regularly exercises discretion and independent judgment.

29 C.F.R. § 541.2(e)(2) (2003).[1] This three-part test is easily demonstrated by the record evidence in this case. Wilson's primary duty was non-manual work directly related to management policies or general business operations, and he customarily and

---

[1] The Department of Labor regulations revised the applicable regulations in August 2004, two months before Wilson left. Because the revisions do not affect the analysis of this case, it is unnecessary to distinguish between the two time periods.

per week. Therefore, the only remaining question is whether Wilson meets the second and third prongs of the test —that his primary duty was non-manual work directly related to Stiles's business operations and that he exercised discretion and independent judgment. The record demonstrates that Wilson did meet both of these elements.

### A. Wilson's Primary Duty Was Non-manual Work Directly Related To Stiles's Business Operations

Wilson meets the second prong of the administrative exemption because his primary duty was non-manual work directly related to Stiles's business operations. The term "primary duty" is defined in the applicable regulations as the principal or most important job duty:

> The term "primary duty" means the principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole.

29 C.F.R. § 541.700(a) (2005). Circuits across the country have consistently held that primary duty is not determined by the employee, but rather by the relative importance of the employee's duties *to the employer*. *Schaefer v. Indiana Michigan Power Co.*, 358 F.3d 394, 401 (6th Cir. 2004) ("[a] job duty... can still be the primary duty if that duty is of principal importance to the employer"); *Demos v. City of Indianapolis*, 302 F.3d 698, 705 (7th Cir. 2002); ("[t]he employee's primary duty is that which is of principal importance to the employer"); *Reich v. Wyoming*, 993 F.2d 739, 742 (10th Cir. 1993) ("[t]he employee's primary duty is that which is of principal importance to the employer"); *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1227 (5th Cir. 1990) ("the employee's primary duty will usually be what she does that is of principal value to the employer").

regularly exercised discretion and independent judgment.

Importantly, it has been well-accepted for years that employees who engage in project management or similar duties are exempt. The new regulations spell this out explicitly. In a section entitled "Administrative Exemption Examples," 29 C.F.R. § 541.203(c) (2005), the DOL explains that,

> An employee who leads a team of other employees assigned to complete major projects for the employer...generally meets the duties requirements for the administrative exemption, even if the employee does not have direct supervisory responsibility over the other employees on the team.

This regulation mirrors the facts of this case. Stiles employed Wilson to lead and coordinate other technicians to complete the installations. (Affidavit of Larry Hart at ¶¶ 6-7; Affidavit of Chuck VanLoon at ¶¶ 5-6; Wilson Dep. at 104-109; Dep. Exhibit 1.) Wilson's job description lists his duties and responsibilities as "[m]anagement of project installations" and to "[m]anage and coordinate installation technicians..." (Wilson Dep. Exhibit 1.) Wilson himself has stated that "[m]anaging multi-million dollar projects at various customer sites is my main job function." (Wilson Dep. Exhibit 3.) What's more, Wilson also admitted that he "coordinated the technicians." (Wilson Dep. at p. 105.) This is the same duty identified by the regulations that generally meets the duties requirements for the administrative exemption. As such, the regulations themselves explicitly state that Wilson is exempt.

## I. WILSON'S JOB DUTIES MEET ALL OF THE ELEMENTS OF AN EXEMPT ADMINISTRATIVE EMPLOYEE

Even ignoring the explicit regulation exempting Project Managers from the overtime requirements, Wilson still meets the three-part test for an exempt administrative employee. Wilson does not dispute that he was making more than $250

To Stiles, Wilson's primary duty was clearly non-manual work. Non-manual work includes a broad range of jobs, including project managers, claims adjusters, financial-services employees, purchasing agents, human-resource managers, executive assistants, oil-pipeline field inspectors, air-traffic controllers, and field engineers. 29 C.F.R. § 541.203 (2005); *O'Dell v. Aleyeska Pipeline Service Co.*, 856 F.2d 1452 (9th Cir. 1988); *Campbell v. Air Force*, 755 F. Supp. 893 (E.D. Cal. 1990); *Lutz v. Ameritech Corp.*, No. 98-2367, 208 F.3d 214 (6th Cir. February 23, 2000) (unpublished). Moreover, the regulations specifically list as exempt those employees who, like Wilson, perform "special assignments" away from the employer's principal place of business. 29 C.F.R. § 541.201(a)(3)(i) (2003). The regulations further explain that "field representatives," "location managers," and "an employee who leads a team...to complete major projects for the employer..." are all examples of exempt employees. 29 C.F.R. § 541.201(a)(3)(i) (2003); 29 C.F.R. § 541.203(c) (2005).

Wilson's primary day-to-day duties—including advising other managers, planning and representing the company on-site—are all types of duties that qualify as non-manual duties under the regulations. 29 C.F.R. § 541.205(b). Wilson routinely advised management by preparing reports on the progress of the installation and the problems encountered during the installation. (Affidavit of Larry Hart at ¶ 10; Affidavit of Chuck VanLoon at ¶ 9.) Wilson was responsible for coordinating the installation of machinery lines and managing technicians required to complete the installations. (Affidavit of Larry Hart at ¶¶ 7 and 10; Affidavit of Chuck VanLoon at ¶¶ 6 and 9.) Wilson also was in charge of customer relations on-site. He coordinated meetings with the customer, and kept the customer informed of his responsibilities, installation

schedule, and whatever additional information could be useful to maintain a positive and proactive customer relationship. (Wilson Dep. at 104-109; Dep. Exhibit 1.) These are all non-manual duties.

Wilson does not dispute that these non-manual duties were his primary job duties. Additionally, Wilson stated that his "main job function" was "[m]anaging multi-million dollar projects at various customer sites." (Wilson Dep. Exhibit 3.) These non-manual job functions were Wilson's primary job duties and constituted the primary value Wilson brought to Stiles and its customers. (Affidavit of Larry Hart at ¶ 6; Affidavit of Chuck VanLoon at ¶ 5; Affidavit of Bob Guadagnoli at ¶ 6; Affidavit of Tom Anderson at ¶ 6.)

Courts have routinely held that performing functions like Wilson's fit within the administrative exemption. For example in the recent case of *Wolfslayer v. IKON Office Solutions, Inc.*, the plaintiff worked on a project at two customer sites. *Wolfslayer v. IKON Office Solutions, Inc.*, Case No. 03-6709, (E.D. Pa., Jan. 26, 2005) (unpublished opinions attached as **Exhibit H**). The plaintiff created status reports, provided logistical support, and fixed any problems with the computer system. The plaintiff argued that her primary duty was not administrative, non-manual work, but rather production work because she processed orders while at the customer sites. The defendant argued in response that the plaintiff's primary duty was to determine why problems with the orders were occurring, not processing orders. The court held that because the plaintiff's primary duties included advising management, planning, and representing the company, her primary duty was non-manual, and was therefore an exempt administrative employee.

Other courts have also held that job duties like Wilson's are non-manual in nature, including jobs with duties such as customer service, planning, problem solving, and scheduling maintenance. For example, in *Reich v. John Alden*, the First Circuit explained that it was undisputed that duties such as contacting and dealing with customers to promote sales were non-manual duties. *Reich v. John Alden*, 126 F.3d at 8. Likewise, in *Koppinger v. American Interiors, Inc.*, the court held that plaintiff's duties of maintenance, administration, planning, and problem solving relating to a computer system were non-manual. *Koppinger v. American Interiors, Inc.*, 295 F.Supp.2d 797, 802 (N.D. Ohio 2003). Again, in *Bagwell v. Florida Broadband, LLC*, the court found that plaintiff's job duties of developing, improving, scheduling maintenance, problem solving and customer relations were administrative and not manual in nature. *Bagwell v. Florida Broadband, LLC*, 385 F.Supp.2d 1316, 1323-1324 (S.D. Fla. 2005). These were all the types of things that Wilson was doing on a daily basis. Therefore, Wilson's primary job duty was the performance of non-manual work directly related to Stiles's or its customers' business operations.[2]

B. Wilson's Occasional Performance Of Manual Labor Does Not Change His Exempt Status.

Wilson has taken the position that he is not exempt because he spent much of his time performing manual labor. First of all, the record clearly demonstrates that Wilson spent

---

[2] It is not disputed that Wilson's work was "directly related" to Stiles's or its customers' business operations. Wilson admitted that he was in regular contact with Stiles's customers and was Stiles's on-site representative for all purposes. (Wilson Dep. at 104-109.) He further admitted that his responsibilities included coordinating project meetings, keeping the customer informed of his responsibilities, and verifying that the machines were functioning properly. (Wilson Dep. at 104-109.) The regulations specifically mention that these duties are directly related to the business operations of the employer or its customers. 29 C.F.R. § 541.201(a)-(c) (2005); 29 C.F.R. § 541.205(c) (2003). Courts throughout the country hold the same. *See, e.g., Kennedy v. Commonwealth Edison Co.*, 410 F.3d 365, 373 (7th Cir. 2005).

very little of his time doing this type of work. (Affidavit of Tom Anderson at ¶ 7, Affidavit of Bob Guadagnoli at ¶ 7, explaining that Wilson spent at least 75% of his time doing non-manual work.) But in any event, it is immaterial whether Wilson spent time doing manual labor.

It is well settled that even if an employee spends time doing manual, non-exempt work, even a significant percentage of his time, that fact does alone not mean that an employee forfeits his exempt status. "[A]n employee's primary duty is the duty of most importance to the employer, not necessarily collateral tasks that make up more than fifty percent of the employee's time." *Lutz*, 208 F.3d 216 *citing Spinden v. GS Roofing Prods. Co.*, 94 F.3d 421 (8th Cir. 1996). This principle is well-accepted. *See, e.g., Donovan v. Burger King*, 672 F.2d 221 (1st Cir. 1982); *Donovan v. Burger King,* 675 F.2d 516 (2d Cir. 1982); *Murray v. Stuckey's, Inc.*, 939 F.2d 614 (8th Cir. 1991); *Spinden v. GS Roofing Prods. Co.*, 94 F.3d 421, 427; *Rutlin v. Prime Succession, Inc.*, 220 F.3d 737 (6th Cir. 2000). For example, the First Circuit in *Donovan v. Burger King Corp.*, evaluated the exempt status of the fast-food restaurant chain's assistant managers. *Donovan v. Burger King*, 672 F.2d 221. The facts showed that the managers spent more than fifty percent of their time engaged in non-exempt, routine manual production activities, including making the food and filling orders. *Donovan v. Burger King*, 672 F.2d at 227. The court held that these managers were exempt employees because their primary duty (that is, their most important duty) was still exempt managerial work. *Id.* In a similar case with similar facts, the Second Circuit agreed with this ruling. *Donovan v. Burger King,* 675 F.2d 516 (2d Cir. 1982).

Likewise, in *Spinden v. GS Roofing Products Co., Inc.*, the Eighth Circuit considered an employee who engaged in non-exempt duties up to eighty to ninety percent of the time. *Spinden v. GS Roofing Prods. Co.*, 94 F.3d 421, 427 (8th Cir. 1996). In that case, the plaintiff was a plant controller in charge of "essentially a one-man department." *Id.* at 428. Despite the fact that the plaintiff spent eighty to ninety percent of his time performing non-exempt bookkeeping functions, the court ruled that the plaintiff's other administrative duties were his primary duty and that he therefore qualified as an exempt administrative employee. *Id.*

In another similar case, the Sixth Circuit decided the exempt status of an employee who worked as a funeral director and embalmer. *Rutlin v. Prime Succession, Inc.*, 220 F.3d 737 (6th Cir. 2000). The employee argued that his primary duties were non-exempt because he spent most of his time doing manual labor, which included cleaning the funeral home. *Id.* at 742. The court disagreed, ruling that even if these non-exempt duties took more than fifty percent of his working time, his exempt duties were still of principal importance to his employer, and therefore constituted his primary duties. *Id.*

As these cases all demonstrate, it is not how much time an employee spends on his exempt duties, the key inquiry is whether exempt work is the employee's primary, or most important, job duty. In this case, Wilson's primary duty was the performance of exempt administrative duties. Larry Hart, Stiles' regional service manager, testified that Wilson's primary duty was "managing installation projects." (Affidavit of Larry Hart at ¶ 6.) Moreover, the only record evidence in this case shows that Wilson was spending only a small portion of his time doing manual labor in any

event. Tom Anderson, director of manufacturing services at KraftMaid, worked with Wilson on a regular basis from December of 2001 through November of 2003. (Affidavit of Tom Anderson at ¶¶ 3-4.) Anderson estimates that Wilson spent seventy-five percent of his time engaged in project management and only twenty-five percent of his time assisting with service on machinery. (Affidavit of Tom Anderson at ¶ 7.) Bob Guadagnoli, project manager at Monarch, worked regularly with Wilson from December 2003 through October 2004. (Affidavit of Bob Guadagnoli at ¶¶ 3-4.) Guadagnoli also estimates that Wilson spent seventy-five percent of his time engaged in project management and only twenty-five percent of his time assisting with service on machinery. (Affidavit of Bob Guadagnoli at ¶¶ 7.)

Wilson's supervisors also confirmed in email messages that Wilson's duties were to manage the project, not engage in manual labor. (VanLoon Deposition Exhibit 1; LeBlanc Deposition Exhibit 1.) For example, in one email, VanLoon explains that Wilson's occasional service should not get in the way of his primary duties and that his responsibility is "to be a liaison between KraftMaid and Stiles" and to "assist with the organization of line installs". (VanLoon Dep. Exhibit 1.) In another email, LeBlanc references the need to provide Wilson with additional support and states "[r]emember that Furgus is the onsite coordinator and not the primary technician." (LeBlanc Dep. Exhibit 1.)

Based on the this record evidence, it is clear that Wilson's primary duty was management of installation projects. The percentage of time spent performing manual labor simply does not change Wilson's primary duty.

C. Wilson Exercised Discretion And Independent Judgment.

The final prong of the administrative exemption test is the exercise of discretion and independent judgment. 29 C.F.R. § 541.200(a) (2005). It cannot be denied that Wilson exercised discretion and independent judgment. Wilson was the on-site Project Manager. Exercising discretion was inherent in Wilson's project management duties. The regulations explain that the exercise of discretion and independent judgment involves "the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(a) (2005).

Wilson exercised discretion and independent judgment each time he worked at a customer's facility and encountered a problem with the machinery. Wilson exercised discretion in determining the particular needs of the customer or machines. (Wilson Dep. at 47.) Wilson also exercised discretion and judgment while preparing his regular reports to clients or Stiles. (Wilson Dep. at 53.) It was Wilson who determined the content of these reports based on client needs. Wilson further had discretion when dealing with customers and deciding who would work on machines. (LeBlanc Dep. at 15-16; VanLoon Dep. at 37, 46.) Additionally, Wilson exercised discretion and judgment each time he decided when to start and stop working, depending on the situation. (Wilson Dep. at 152.) Each of these examples show that Wilson evaluated possible courses of conduct and acted or made a decision after the various possibilities were considered. The record shows that Wilson acted with ample independent judgment and discretion and thus fulfills the requirements of the third prong of the test. These facts easily satisfy this final prong of the administrative exemption.

Many courts, including the First Circuit, have held that these types of duties reflect the exercise of discretion and independent judgment. The First Circuit in *Reich v. John Alden* examined the administrative exemption of marketing representatives. *Reich v. John Alden*, 126 F.3d 1. The plaintiff-employees met with agents and recommended the purchase and use of the employer's products. *Id.* Arguing that this did not involve the exercise of discretion, the plaintiff-employees explained that they simply used techniques learned in training sessions and weekly sales meetings and were provided tips from supervisors regarding which products to emphasize. *Id.* at 14. The court rejected this argument and decided that the representatives did exercise discretion because they determined the content of their conversations with agents, as dictated by the needs or customer base of that agent. *Id.* The court held the employees were correctly classified as exempt administrators. *Id.*

Other courts have reached the same conclusion for the same reasons. In *Kennedy*, the Seventh Circuit determined that employees who came up with a set of instructions to solve reported problems at a nuclear power plant exercised discretion and independent judgment. *Kennedy*, 410 F.3d at 375. These workers were required to use independent judgment to determine how best to respond to these issues. *Id.* Still other workers were routinely in contact with management, making recommendations about projects, schedules, and personnel. The court ruled that each of these activities required the exercise of discretion and independent judgment. The court affirmed a grant of summary judgment determining that each of these employees were properly considered to be exempt administrative employees. *Id.*

The same conclusion with similar duties was reached in *Wolfslayer*, described above. The *Wolfslayer* plaintiff's work included project plans and identifying customer problems and solutions. The court held that plaintiff's work problem solving involved the exercise of discretion because it was plaintiff that decided who could best resolve or decide the issue. The court also ruled that discretion was exercised each time the employee engaged in meetings and conference calls during the planning and implementation stages of her project. These tasks were based on plaintiff's decisions regarding the priority of tasks to be discussed and plaintiff's planning decisions. The court held that these were the tasks of an exempt administrative employee and reflect the exercise of independent discretion and judgment. *See also Koppinger v. American Interiors, Inc.*, 295 F.Supp.2d 797, 805-806 (the employee's job duties of evaluating and/or fixing customer problems constitute the exercise of discretion and independent judgment); *Lutz v. Ameritech Corp.*, 208 F.3d 214 (based in part on deposition and job description, employee who assesses the needs of clients, develops installation plans, and coordinates the installation exercised discretion and independent judgment); *Ashworth v. E.B. Badger & Sons Co.*, 63 F.Supp. 710 (D.C. Mass. 1945) (employee working as a field inspector, sent by employer to plants to represent the employer during installation of equipment to determine if plans and specifications were properly met, exercised discretion and independent judgment).

Based on the caselaw from the First Circuit and courts across the country, Wilson clearly engaged in activities which reflect the exercise of discretion and independent judgment. Wilson's day-to-day duties as the only interface between Stiles and its customers involved more than just rote or mindless activities. Wilson was

responsible for taking all steps necessary to maintain good customer relations and to keep the project up and running. Wilson used independent judgment and discretion to perform these tasks. Accordingly, Wilson meets the this final prong of the administrative exemption test.

## II. Wilson's Claim is Barred, in Part, by the Statute of Limitations

Even ignoring the explicit regulations and the caselaw barring Wilson's claims, Wilson's FLSA claim is still barred, in part, by the applicable statute of limitations. Wilson seeks to be compensated for overtime from December of 2001 through October of 2004.[3] (Plaintiff's Complaint at ¶¶ 8-9.) But the statute of limitations for a claim under the FLSA is two years. 29 U.S.C. § 255(a). The only way to extend this period of limitations to three years is if an employee can prove that an employer willfully violated the FLSA. *Id.* Stiles did not willfully violate the FLSA, so the ordinary two year statute of limitations applies here.

The Supreme Court has explained that an employer's violation of the FLSA is only willful if the employer knew that its actions violated the statute or showed a reckless disregard for whether its conduct was prohibited by the statute. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). "If an employer acts reasonably in determining its legal obligation, its action cannot be deemed willful..." *Hillstrom v. Best Western TLC Hotel*, 354 F.3d 27, 33 (1st Cir. 2003) *citing McLaughlin* at 1677. Reckless disregard may be shown by repeated violations; the destruction or falsification of required records; or attempts to evade the FLSA's requirements. *E.g.*, *Dole v. Elliott Travel & Tours*, 942 F.2d 962, 967 (6th Cir. 1991); *see also e.g., Martin v. Deiriggi*, 985

---

[3] Wilson and defendant entered into a tolling agreement on December 29, 2004.

F.2d 129, 136 (4th Cir. 1992); *Brock v. Superior Care*, 840 F.2d 1054, 1062 (2d Cir. 1988). An employer who makes efforts to comply with the requirements of the FLSA but fails to do so because of mistaken interpretations of the law, even if unreasonable, does not commit a willful violation. *See Reich v. Tiller Helicopter Servs.*, 8 F.3d 1018, 1036 (6th Cir. 1993); *see also Reich v. Gateway Press*, 13 F.3d 685, 702 (3d Cir. 1994).

Wilson bears the burden of proof on this issue. *Adams v. United States*, 350 F.3d 1216, 1229 (Fed. Cir. 2003). This is a burden that Wilson cannot meet. Assuming *arguendo* that Wilson is not exempt, Stiles did not know that Wilson was not an exempt employee, nor did it show a reckless disregard for the requirements of the FLSA. Stiles believed that Wilson would exercise significant discretion in a non-manual position that was essential to Stiles's relationship with its customers, and believed that it was proper to classify Wilson as exempt. (Affidavit of Larry Hart at ¶ 15; Affidavit of Chuck VanLoon at ¶ 14.) Moreover, Wilson chose to be compensated on a salary basis. (Wilson Dep. at ¶¶ 118-119.) Even if Stiles's classification of Wilson could be characterized as incorrect or unreasonable, Stiles did not willfully violate the FLSA. *See Tiller Helicopter*, 8 F.3d at 1036. Because Wilson's claims under the FLSA are subject to a two-year statute of limitations, Stiles should be granted summary judgment on Wilson's claim for overtime compensation predating December 29, 2002.

## CONCLUSION

Wilson is an exempt administrative employee. He was not entitled to overtime under the FLSA. Wilson's primary duties were non-manual that were directly related to Stiles's and its customers' general business operations. Moreover, Wilson regularly and customarily exercised independent judgment and discretion in carrying out his duties. Wilson meets all of the elements of an exempt administrative employee,

therefore, Stiles is entitled to summary judgment on Wilson's claims. Finally, because Wilson cannot establish that Stiles willfully violated the FLSA, Stiles is entitled to summary judgment on Wilson's claims predating December 29, 2002.

Dated: June 7, 2006

Michael F. Kraemer (#6751)
HINCKLEY, ALLEN & SNYDER LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (facsimile)
Co-Counsel for Defendant

Paul T. Sorensen (Pro Hac Vice)
WARNER, NORCROSS & JUDD LLP
900 Fifth Third Center
111 Lyon Street, N.W.
Grand Rapids, MI 49503-2487
(616) 752-2000
(616) 222-2135 (facsimile)
Counsel for Defendant

**CERTIFICATION**

Thomas J. Cronin, Esq.
Gunning & LaFazia, Inc.
56 Pine Street – 7th Floor
Providence, Rhode Island 02903

Jeffrey D. Pollack, Esq.
Mintz & Gold LLP
470 Park Avenue So. – 10th Floor – North
New York, New York 10016

I certify that I mailed a copy of the within Memorandum of Law to counsel of record, as set forth above, on ~~May~~ June 7, 2006.

[signature]

1269674-8