UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

FURGUS WILSON,

Plaintiff,

vs

STILES MACHINERY, INC.,

Defendant.

Case No: 05-CV-324S

**OBJECTION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Now comes the plaintiff, Furgus Wilson, and objects to the defendant, Stiles Machinery, Inc.'s, motion for summary judgment for the reasons set out in the plaintiff's memorandum of law in opposition to defendant's motion for summary judgment and in support of plaintiff's cross-motion for summary judgment. Plaintiff, Furgus Wilson, moves the court to deny the defendant's motion.

Plaintiff,
By His Attorneys,

Thomas J. Cronin (#5302)
GUNNING & LAFAZIA, INC.
56 Pine Street
Providence, RI 02903
Telephone #: (401) 521-6900
Fax #: (401) 521-6901
Direct Dial #: (401) 521-7977

Jeffrey D. Pollack (JP-1049)
Mintz & Gold, LLP
470 Park Avenue So., 10th Fl. - North
New York, NY 10016
Telephone #: (212) 696-4848
Fax #: (212) 696-1231

## CERTIFICATION

I hereby certify that I faxed a copy of the within motion to the following attorneys of record on this 23rd day of June, 2006:

Paul T. Sorenson, Esq.
Warner Norcross & Judd LLP
900 Fifth Third Center
111 Lyon Street, N.W.
Grand Rapids, MI 49417

Michael F. Kraemer, Esq.
Hinckley, Allen & Snyder LLP
1500 Fleet Center
Providence, RI 02903

ORIGINAL

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

FURGUS WILSON,

Plaintiff,

-against-

STILES MACHINERY, INC.,

Defendant.

Case No: 05-CV-324WES

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

## Preliminary Statement

Plaintiff Furgus Wilson ("Wilson") submits this brief in opposition to defendant's motion for summary judgment and hereby cross-moves the Court pursuant to Federal Rule of Civil Procedure 56 to grant him summary judgment on his Fair Labor Standards Act ("FLSA") claim and issue an order finding that:

1. Wilson is entitled to overtime compensation for all hours worked over forty per week because defendant Stiles Machinery, Inc. ("Stiles") misclassified him as an exempt employee.
2. Wilson was employed for a stated fifty-five hour workweek, so defendant cannot take advantage of the Fluctuating Workweek method of overtime compensation.
3. Defendant willfully violated the FLSA, so Wilson is entitled to three years of unpaid overtime.
4. Wilson is entitled to liquidated damages in amount equal to his unpaid overtime.

## Facts

The material facts are set forth in detail in Plaintiff's Counter-Statement of Undisputed Material Facts ("Pl. Counter-Statement") to which we respectfully draw the Court's attention. We will only highlight the facts herein.

## Argument

### Point I. Stiles Misclassified Wilson.

Stiles claims that Wilson was an exempt administrative employee. As the employer asserting the exemption, Stiles has the burden to prove that Wilson fit squarely within the definition of an administrative employee. *See, e.g., A.H. Phillips, Inc. v. Walling,* 324 U.S. 490, 498 (1945) (employer must prove affirmative defense that employee falls squarely within exemption); *O'Brien v. Town of Agawam,* 350 F. 3d 279, 292 (1st Cir. 2003) (employer bears burden of proof on claimed exemption). *Accord Reich v. John Alden Life. Ins. Co.,* 126 F.3d 1, 7 (1st Cir. 1997) ("*John Alden*"); *Reich v.*

*Newspapers of New England, Inc.*, 44 F.3d 1060, 1070 (1st Cir. 1995); *Secretary of Labor v. DeSisto*, 929 F.2d 789, 797 (1st Cir. 1991); *Marshall v. Erin Food Servs., Inc.*, 672 F.2d 229, 231 (1st Cir. 1982).

Moreover, "the remedial nature of the statute requires that the FLSA exemptions be 'narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit.'" *John Alden,* 126 F.3d at 7; *Newspapers of New England, Inc.*, 44 F.3d at 1070 (*quoting Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)); *DeSisto*, 929 F.2d at 797.

In determining whether an employee is exempt courts look at all relevant facts, including the "relative importance of the [exempt] duties as compared with other types of duties . . . and the relationship between his salary and the wages paid other employees for the kind of nonexempt work performed." *See, e.g.*, 29 C.F.R. § 541.206 (2000).

Wilson's title is not determinative; the applicability – or inapplicability – of the exemption turns on his actual duties and responsibilities. *John Alden,* 126 F.3d at 10; *Newspapers of New England, Inc.*, 44 F.3d at 1075. As set forth in plaintiff's counter-statement of undisputed facts, Wilson's primary duty was not that of an administrative employee. Thus, Stiles misclassified him.

To qualify as an exempt administrative employee, Wilson's primary duty must have 1) consisted of the performance of office or non-manual work directly related to management policies or general business operations of his employer or his employer's customers; and 2) required the exercise of discretion and independent judgment. 29 C.F.R. § 541.2.[1] *See also John Alden*, 126 F.3d at 8.

---

[1] Inasmuch as virtually all of plaintiff's employment preceded the Department of Labor's August 23, 2004 changes to the exemption tests we rely on the old tests. Defendant repeatedly cites to *Footnote cont. . . .*

A. Wilson Performed Too Much Manual Labor to Satisfy the Primary Duty Test.

> [I]f the employee performs so much manual work (other than office work) that he cannot be said to be basically a "white-collar" employee he does not qualify for exemption as a bona fide administrative employee, even if the manual work he performs is directly and closely related to the work requiring the exercise of discretion and independent judgment. Thus, it is obvious that employees who spend most of their time in using tools, instruments, machinery, or other equipment . . . would not be bona fide administrative employees within the meaning of § 541.2.

29 C.F.R. §541.203(b) (2000).

As set forth by defendant's own authority, "some manual labor is still permissible . . . so long as the manual labor is not the majority of the work." *Koppinger v. American Interiors, Inc.*, 295 F. Supp. 2d 797, 801 (N.D. Ohio 2003).

The weekly work reports Wilson submitted to defendant (attached as Exhibit F to the Declaration of Jeffrey D. Pollack ("Pollack Decl.")) demonstrate that Wilson spent approximately seventy percent (70%) of his time performing manual labor. Thus, Wilson was not an administrative employee.[2]

Accordingly, the Court should find that Wilson performed too much manual labor to be an administrative employee.

B. Wilson's Work Did Not Directly Relate to Management Policies or General Operations of Defendant or Defendant's Customers.

The phrase "directly related to management policies or general operations of the employer or the employer's customers" (hereafter the "Phrase") "describes those types of activities relating to the administrative operations of a business as distinguished from

---

the revised regulations despite the fact that defendant's own authority, *Kennedy v. Commonwealth Edison Co.*, 410 F.3d 365, 369 (7th Cir. 2005), holds that the revised regulations do not apply retroactively. This is especially relevant to defendant's reliance on 29 C.F.R. § 700 (Def. Br. at 10), which is a completely new section of the regulations, not merely a revision.

[2] As discussed *infra*, Wilson's other duties did not "directly relate to management policies or general operations of the employer or the employer's customers."

"production" or, in a retail or service establishment, "sales" work. 29 C.F.R. § 541.205(a) (2000) (emphasis supplied). "The concept of 'production' in [the] administrative/production dichotomy is not to be understood as covering only work involving the manufacture of tangibles." *Martin v. Cooper Electric Supply Co.*, 940 F.2d 896, 903 (3rd Cir. 1991). "[N]on-manufacturing employees can be considered 'production' employees in those instances where their job is to generate (i.e., 'produce') the very product or service that the employer's business offers to the public." *John Alden*, 126 F.3d at 9.

Leaving no doubt that Wilson was engaged in production, Don LeBlanc, Stiles' Manager of Special Projects at the time Wilson worked at Kraftmaid, testified as follows:

Q. For what period of time was Furgus [at the customer's site] full-time?

A. [W]e sold his services for a period of one year as part of that project.

LeBlanc Tr. at 19:15-17 (emphasis supplied). Accordingly, the Court should find that Wilson engaged in production and thus was not an administrative employee.

The Phrase also "limits the exemption to persons who perform work of substantial importance to the management or operation of the business of his employer or his employer's customers." 29 C.F.R. § 541.205(a) (2000) (emphasis supplied). "[I]n assessing substantial importance it is necessary to look at the nature of the work, not its ultimate consequence." *John Alden*, 126 F.3d at 11 (quotations and citation omitted).

Defendant argues that "Wilson's success or failure at these customer sites was very important to Stiles and its customers. If the machine lines did not properly function, it could result in substantial business losses for both Stiles and its customers." Hart. Aff. ¶ 14; Van Loon Aff. ¶ 12. The regulations make clear, however, that the possibility of severe financial loss is insufficient to make a person an administrative employee. 29

C.F.R. § 541.205(b)(2) (2000); 29 C.F.R. § 541.207(f) (2000); 29 C.F.R. § 541.202(f) (2005). *See also Clark v. J.M. Benson Co., Inc.*, 789 F.2d 282, 287 (4th Cir. 1986) ("while Clark may have held an indispensable position . . . this fact is insufficient to prove that her primary duty was administrative . . .").

The Phrase embraces "a wide variety of persons who either carry out major assignments in conducting the operations of the business, or whose work affects business operations to a substantial degree . . .." 29 C.F.R. § 541.205(c) (2000) (emphasis supplied). To affect the employer's business to a "substantial degree" the employee's work must substantially affect the very structure of business operations. Indeed, defendant's own authority holds that the administrative exemption applies only to "employees whose work substantially affects the structure of an employer's business operation and management policies." *Wolfslayer v. Ikon Office Solutions, Inc.*, 2005 WL 181913 (E.D. Pa. Jan. 26, 2005) (Def. Ex. H at 16) (*quoting Cooper Elec.*, 940 F.2d at 906) (emphasis in *Cooper Elec.*).

Inasmuch as Wilson's work did not directly relate to defendant's management policies or the general operations of defendant or its customers the Court should find that he was not an administrative employee.

C. Wilson Did Not Exercise Discretion and Independent Judgment.

The exercise of discretion and independent judgment:

> (a) [I]nvolves the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered. [It] implies that the person has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance.
>
> (b) It has been most frequently misunderstood and misapplied by employers and employees in cases involving the following: (1) confusion between the exercise of discretion and independent judgment, and the use of skill in applying techniques, procedures, or specific standards; and (2)

> misapplication of the term to employees making decisions relating to matters of little consequence.

29 C.F.R. § 541.207 (2000).

"The discretion and independent judgment exercised must be real and substantial, that is, they must be exercised with respect to matters of consequence." *John Alden*, 126 F.3d at 13 (*quoting* 29 C.F.R. § 541.207(d)(1)). The regulations and case law distinguish between discretion and independent judgment, and the "use of skill in applying techniques, procedures or specific standards." "An employee who merely applies his knowledge in following prescribed procedures or determining which procedure to follow, or who determines whether specified standards are met . . . is not exercising discretion and independent judgment within the meaning of § 541.2" 29 C.F.R.§ 541.207(c)(1) (2000); 29 C.F.R. § 541.202(e) (2005).

Defendant argues that Wilson exercised discretion and independent judgment:

- When he "encountered a problem with the machinery"
- "While preparing reports of clients or Stiles [because he] determined the content of those reports based on client needs"; and
- "Each time he decided when to start and stop working, depending on the situation."

Def. Br. at 17.[3]

These types of decisions are simply too insignificant to qualify Wilson as an exempt administrative employee. *See* 29 C.F.R. § 541.207(d)(1) (2000) (decisions "concerning relatively unimportant matters are not those intended by the regulations"). Indeed, if these types of decisions were sufficient to constitute the exercise of discretion

[3] Defendant does not cite any authority for the proposition that deciding when to start and stop work constitutes discretion and independent judgment. *Cf. Clark*, 789 F.2d at 287-88 (employee's ability to decide whether to take work home does not show exercise of discretion and independent judgment).

and independent judgment it would exponentially increase the number of people covered by the exemption far beyond the intent of the regulations.

Here, the decisions Wilson made were too insignificant to satisfy the discretion and independent judgment test. *See, e.g.*, Pl. Counter-Statement ¶¶ 13, 14, 16 & 20.

D. Cases Law Confirms that Wilson was not an Administrative Employee.

The facts in this case are extremely similar to those in *Bothell v Phase Metrics, Inc.*, 299 F.3d 1120 (9th Cir. 2002), where plaintiff was employed as a field service engineer. He spent the majority of his time at one of defendant's largest clients, where he was the main contact with the client. *Id.* at 1123.

> [H]is primary duties were to keep Phase Metrics' equipment in good working order and to act as a conduit for information between his employer and its customer. [O]ver a fifty-two week period, he worked with crews to install ten machines, each of which took approximately two weeks: installations, including the paperwork and customer contacts directly associated with those installations, took up approximately 40% of his time. Bothell spent additional time troubleshooting and maintaining the existing machines. The remainder of his time was spent responding to customer calls, learning about systems and procedures, and completing the paperwork required by Phase Metrics.

*Id.* at 1124 (emphasis added).

> Work relating to customer service of products sold is not necessarily "administrative" work as that term is commonly understood. In this case, for example, Phase Metrics does exist to design, manufacture, and sell test equipment. But, as Phase Metrics acknowledges, its equipment is "technologically advanced." Customers require installation, training, and service assistance in order successfully to operate the equipment and are unlikely to buy such equipment unless there is such assistance. Customer service activities, therefore, go to the heart of Phase Metrics' marketplace offerings, not to the internal administration of Phase Metrics' business (or that of its customers).

*Id.* at 1126 (emphasis supplied).

> Bothell's evidence, if accepted as true, could support a finding that he was a highly skilled repairman who, rather than traveling from job-site to job-site, was assigned to a specific facility and charged with keeping its equipment in good working order. Under his version of the facts, Bothell

> was the high-tech equivalent of the Xerox machine man who meets and confers with customers to identify the problem, diagnoses the malfunction, formulates a work plan, repairs the equipment based on procedures established by the manufacturer, and fills out a field service report to enable his employer to bill for the work. His primary duty was to install, troubleshoot, and maintain Max Media equipment.
>
> If Bothell was essentially a repairman, then he did not engage in running the business itself or determining its overall course or policies. This holds true whether or not customer service was a primary, secondary or "ancillary" part of Phase Metrics' marketplace offerings. In short, Bothell's work should not be labeled "administrative" merely because Phase Metrics chose to provide on-site customer service to a few select customers, rather than as a separate product line.

*Id.* at 1128 (emphasis supplied).

The *Bothell* court examined two of the cases defendant cites, *John Alden* and *O'Dell v. Alyeska Pipeline Serv. Co.*, 856 F.2d 1452 (9th Cir. 1988), and found them both factually distinguishable (as they are from the instant case). *Bothell*, 299 F.3d at 1126-27, 1129.

In *Harrington v Despatch Industries L.P.*, 2005 WL 1527630 (D. Ma. June 29, 2005), the court found that plaintiff, a field service account manager, was not an exempt administrative employee. Although the company had Certified Service Representatives ("CSRs") who were supposed to perform the actual service work (*id.* at *1), Harrington spent more than 50% of his time performing manual labor. *Id.* at *2. The court rejected the company's argument that "the crux of Harrington's duties . . . is the oversight of CSRs and regional field service operations." *Id.* at *3.

> Harrington acknowledges that as a loyal employee he promoted service agreements, introduced CSRs to customers, and did whatever he could to keep customers happy. However, in Harrington's view, these functions were ancillary to his primary role as a service technician, because the best way to build customer relationships is "to keep the equipment running." Harrington told Despatch that assuming increased administrative duties was "not doable" because of the physical demands of his job.

*Id.* at *3.

In *Sack v Miami Helicopter Svc., Inc.*, 986 F. Supp 1456 (S.D. Fl. 1997), plaintiff, the director of maintenance, performed "hands-on" mechanical work fifteen percent of the time. Fifty percent of his time he spent inspecting helicopters, including opening a work order, consulting with the customer to determine what work they wanted done, planning the work, ordering the parts, sending the work order to the mechanics, and directing the mechanics. Sack then inspected the work after it was performed, including making visual inspections and taking measurements. He also assured that all required paperwork complied with FAA requirements. *Id.* at 1461. He had authority to subcontract some of the mechanical work. Finally, he spent approximately 20% of his time organizing the company's technical library. The remainder of his time was spent on miscellaneous activities, including administering the company's alcohol misuse program. *Id.* at 1462.

The court held that he was <u>not</u> an exempt administrative (or executive) employee

> Sack's time (20%) spent organizing and maintaining an FAA required technical library did not require the use of discretion or independent judgment and therefore does not qualify as an administrative activity. Nor does Sack's time (15%) that was spent performing hands on mechanical work . . ..
>
> * * *
>
> Opening a work order initiates the repair of a customer's aircraft and, as such, is a part of Miami Helicopter's production work. . . . Sack's time spent opening the work orders does not inure to the fifty percent (50%) primary duty requirement.
>
> [T]he particular decisions regarding parts and employees are actually more akin to the use of skilled decisions. . . . Thus, this work, which is an early stage in the repair or production work of Miami Helicopter, is not "directly related to management policies or general business operations."
>
> The determination of whether or not the pertinent paperwork complies with the F.A.A. requirements, and the review of the manufacturer's and the F.A.A.'s requirements are an integral part of the production at Miami Helicopter and, thus, do not directly relate to management policies or general business operations. This aspect of the inspection procedure is

> fairly routinized, and any discretion or independent judgment would be most accurately characterized as an application of skill.
>
> * * *
>
> [T]he actual visual and physical inspection of the aircraft and aircraft components does not qualify as being directly related to management policies or general business operations.
>
> The final procedure in the inspection process, directing the repair or replacement of parts which fail inspection, is part of the production process at Miami Helicopter, and as such does not qualify as an administrative operation of the business.

*Id.* at 1470-71.

In *Donihoo v. Dallas Airmotive, Inc.*, 1998 U.S. Dist. LEXIS 1417 (N.D. Tx. Feb. 2, 1998), the court denied the employer's motion for summary judgment regarding whether the senior customer service representative was exempt. The company rebuilt and repaired aircraft engines. Plaintiff took telephone calls from customers experiencing problems with their engines, prepared cost estimates, maintained the company's technical library, and prepared tool kits for the customer service representatives. He frequently traveled to the customer to diagnose a problem. Donihoo claimed that he spent 75% of his time at customer's facilities.

If possible, he repaired the engine at the customer's location; if not, he recommended that the customer send the engine to defendant's facility. If the customer agreed to ship the engine to defendant, Donihoo acted "as the liaison between the customer and Dallas Airmotive by communicating the customer's needs to the company and determining the progress of the engine repair." 1998 U.S. Dist. LEXIS at *4.

> [T]he Court cannot find . . . that Donihoo meets the first prong of the short test of the administrative exemption. Although he appears to have at least some administrative duties, he is also involved with production when he makes repairs to engines. Although he works in an office when he is not traveling, he performs manual labor when he goes to troubleshoot an engine problem for a customer. The Court cannot find that Donihoo "affects policy or business operations to a substantial degree" . . ..

*Id.* at *16.

In *Copas v. East Bay Municipal Utility Dist.*, 61 F. Supp. 2d 1017 (N.D. Cal. 1999), the court found that plaintiff, the defendant's facility supervisor, was not exempt. He worked on a major contract, helped prepare the operating budget, and "had overall responsibility for operating and maintaining" defendant's main building. He also "oversaw the final construction and opening of the new building (from the maintenance standpoint), which required, among other things, that he check the building for problems, bring any problems to the attention of the contractor, and follow up on the corrective action." *Id.* at 1036-37. He secured contracts with vendors, and was responsible to ensure that the vendors performed their work properly. Nevertheless, he spent the majority of his time operating and maintaining facility equipment. *Id.* at 1037. Thus, the court found that his work did not did not directly relate to defendant's management policies or general business operations. *Id.*[4]

In *Jarret v ERC Properties, Inc.*, 211 F.3d 1078 (8th Cir. 2000), the court affirmed a jury's finding that plaintiff, a resident site manager, was not an exempt administrative employee. Jarret's duties:

> [I]ncluded collecting applications from prospective tenants; verifying references and other application information; contacting potential applicants regarding apartment availability; preparing "reports," which she described as filling in blanks on printed forms; writing receipts and verifying rent payments; performing minor repairs and getting help for repairs she could not do; picking up trash; maintaining the grounds; cleaning the laundry room, bathrooms, and community room; locking and unlocking common rooms according to a schedule determined by her supervisor; and forwarding invoices to ERC for payment.

*Id.* at 1082.

---

[4] Nevertheless, the court found he was an exempt executive employee because he managed the facility and customarily and regularly directed two employees. *Id.*

In *Burke v. County of Monroe,* 225 F. Supp. 2d 306, 320 (W.D.N.Y. 2002), the court found that computer network administrators did not exercise discretion and independent judgment because they "made no independent decisions on matters of great importance" and "did not decide what software was loaded, or whether to update the software on a particular system. They performed highly skilled work when troubleshooting problems, but this is not evidence of discretion and independent judgment."

As set forth more fully in plaintiff's Counter-Statement of Undisputed Material Facts, Wilson spent seventy percent (70%) of his time performing manual labor. That in itself is sufficient to render him non-exempt. Additionally, the other work he performed 1) related to production, 2) was not of substantial importance to the management or operation of the business of Stiles or Stiles' customers, and 3) did not affect Stiles' business to a substantial degree. Moreover, Wilson's work did not require the exercise of discretion and independent judgment. Finally, Wilson's earnings were right in the median range of the amount earned by Stiles' Field Service Representatives. *See* Pl. Counter-Statement ¶¶ 6 & 51. Accordingly, the Court should find that Wilson was not an exempt employee.

E. Defendant's Arguments and Authority Distinguished.

Defendant's authority does not support its case.

The plaintiffs in *John Alden* did not perform any manual labor and were not involved in production of the defendant's products, i.e., insurance policies. Rather, they were the company's connection to those involved in production.

Plaintiff in *O'Dell v. Alyeska Pipeline Serv. Co.*, 856 F.2d 1452 (9th Cir. 1988), did not perform any manual labor. Moreover, the *Bothell* court examined both *O'Dell*

and *John Alden* and found them inapplicable to the facts in that case – facts that are extremely similar to those here. *Bothell*, 299 F.3d at 1126-27, 1129.

Plaintiff in *Lutz v. Ameritech Corp.*, 208 F.3d 214 (6th Cir. 2000), worked exclusively on the company's own computer systems, which put him clearly on the administration side of the administration/production dichotomy.

*Campbell v. U.S. Air Force*, 755 F. Supp. 893 (E.D. Ca. 1990), was decided under the Civil Service regulations, not the FLSA regulations. *See id.* at 895-96.

*Donovan v. Burger King*, 672 F.2d 221 (1st Cir. 1982) and *Murray v. Stuckey's, Inc.*, 939 F.2d 614 (8th Cir. 1991), involved store mangers (or assistant mangers in *Burger King*), who were "in charge of the store", and as such were exempt executives. *Burger King*, 672 F.2d at 227; *Murray*, 939 F.2d at 618.

*Wolfslayer*, involved a business analyst who played a major role in "an enormous initiative to streamline [the company's own] operations." Def. Ex. H at 2.

Plaintiff in *Koppinger v. American Interiors, Inc.*, 295 F. Supp. 2d 797 (N.D. Ohio 2003), was the sole person in, and in charge of, the company's I.T. department, and as such was in charge of "maintaining, upgrading, and administering the [company's] computer system . . . that was clearly integral to defendant's general business operations." *Id.* at 802.

Plaintiff in *Bagwell v. Florida Broadband, LLC*, 385 F. Supp. 2d 1316 (S.D. Fla. 2005), was the company's Network Operations Engineer, who "developed and improved [the company's] network system in an effort to make it function reliably." *Id.* at 1323. Plaintiff also had substantial human resource functions, including participating in hiring and firing employees, approving requests for time off and employee time sheets, and recommending pay raises.

Plaintiff in *Spinden v. GS Roofing Prods. Co., Inc.*, 94 F.3d 421 (8th Cir. 1996), was the controller of a plant, who also computerized the company's accounting practices, signed equipment leases, participated in senior management meetings, served as the registered agent for service of process, and created Variance Reports that "were vital to pricing and production information." *Id.* at 428. He was the "chief financial employee" at the plant. *Id.* Moreover, he performed only office work.

In *Kennedy v. Commonwealth Edison Co.*, 410 F.3d 365, 369 (7th Cir. 2005), the plaintiffs agreed that they did only office or non-manual labor. "Plaintiffs admit that the planners do not turn the wrenches themselves . . .." *Id.* at 373. Here, in contrast, Wilson's supervisor told him to do more "wrenching." Pl. Counter-Statement ¶ 11 & 36.

Plaintiff in *Ashworth v. E.B. Badger & Sons Co.*, 63 F. Supp. 710 (D. Ma. 1945), was assigned to third party vendors' sites to inspect products manufactured by the vendor for defendant company to use in providing services to defendant's customers (unlike Wilson who was assigned to defendant's own customer's sites to service the machines sold by defendant).

Invoking 29 C.F.R. Section 541.201 (a)(3)(i), defendant argues that "employees who, like Wilson, perform 'special assignments' away from the employer's principal place of business" are administrative. Def. Br. at 11. That same section, however, cautions that a field representative "may be a 'glorified serviceman.'" 29 C.F.R. § 541.201(a)(3)(i) (2000).

Defendant cites the revised regulations (which are inapplicable to this instant case) to argue that an employee "who leads a team of other employees" is exempt. *See,*

*e.g.*, Def. Br. at 9 & 11.[5] The fallacy there is that Wilson did not "lead" any employees, let alone a team of employees. Pl. Counter-Statement ¶ 8(e).

Defendant's factual arguments are equally unavailing.

According to defendant, Wilson's duties included "verifying that the machine line functions properly and produces appropriate finished products . . . inspected equipment, observed problems, considered necessary repairs and decided whether modifications were necessary." Hart Aff. ¶ 9. These assertions actually support Wilson's position that he was not exempt. *See* 29 C.F.R. § 541.207(c)(1) (2000) (inspectors ordinarily do not exercise discretion and independent judgment); 29 C.F.R. § 541.203(g) (2005) (same).

Defendant repeatedly cites to a resume Wilson prepared as part of his efforts to find a job that would not require so much unpaid overtime in arguing that his duties made him an administrative employee. The Court, however, should recognize that statements on resumes are often inflated to make the person look more appealing to potential employers. Indeed, defendant's own authority, *Wolfslayer*, holds that statements on a resume "must be taken with a grain of salt." Def. Ex. H at 18 (*citing Ale v. Tennessee Valley Authority*, 269 F.3d 680, 689 n.2 (6th Cir. 2001) ("resumes may not provide the most accurate picture of an employee's job because resumes are typically 'designed to enhance the employee's duties and responsibilities in order to obtain a job.'")).[6] The

[5] The regulation refers to an employee "who leads a team of other employees assigned to complete major projects . . . such as purchasing, selling or closing all or part of the business, negotiating a real estate transaction or collective bargaining agreement, or designing and implementing productivity improvement . . .." 29 C.F.R. § 541.203(c) (2005).

[6] *See Schaefer v. Indiana Mich. Power Co.*, 358 F.3d 394, 401 (6th Cir. 2004) (same); *Lee v. Tennessee Valley Auth.*, 2005 WL 2708899, *8 (E.D. Tn. Oct. 21, 2005) ("the Court must focus on an employee's actual daily activities, as opposed to generalized job descriptions and the characterization of these duties in the employee's resume"). *See also Schaefer*, 358 F.3d at 405 ("it is not enough to merely latch on to words like 'decision,' 'recommendation,' judgment,' or 'determine' . . . in Schaefer's deposition testimony"); *Ale*, 269 F.3d at 691 ("the words 'in charge' are not a magical incantation that render an employee [exempt] regardless of his actual duties.").

Court, therefore, should find that the statements on the work reports Wilson prepared at or around the time he performed the work (Pollack Decl. Ex. F) constitute the best evidence of what work he actually did.

Defendant relies upon the affidavit of Bob Guadagnoli, Monarch's project manager, to argue that Wilson spent 75% of his time "managing the installation project." Guadagnoli Aff. ¶ 7, Def. Br. at 7, 16. This reliance is misplaced, however, inasmuch as Guadagnoli does not have the requisite knowledge to make such statement because he observed Wilson for only approximately twenty-five percent (25%) of Wilson's time. (Wilson Decl. ¶ 12.) Thus, Guadagnoli has absolutely no idea what Wilson did during the remaining 75% of his (Wilson's) time.[7]

Defendant's reliance on the affidavit of Tom Anderson, Kraftmaid's Director of Manufacturing Services (Anderson Aff. ¶ 7; Def. Br. at 7, 16), for that argument is even more misguided. Anderson spent almost no time personally observing Wilson's work (Wilson Decl. ¶ 13), thus he has no personal knowledge upon which to make such a statement.

Thus, the Court should dismiss defendant's arguments and hold that Wilson was not an exempt administrative employee.

Point II. Wilson was Employed for a Fixed Workweek.

Defendant will likely argue that even if it misclassified Wilson, his damages should be calculated according to the Fluctuating Workweek ("FWW") method. *See* 29 C.F.R. § 778.114 (2000). The FWW, however, applies only "[w]here there is a clear mutual understanding of the parties that the fixed salary is compensation (apart from

[7] None of the affidavits submitted by defendant are sworn or verified, thus they do not comply with Rule 56.

overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period . . ..") 29 C.F.R. § 778.114(a) (2000) (emphasis supplied). The FWW does not apply where the salary is intended to cover a fixed workweek.[8]

Defendant cannot take advantage of the FWW because Wilson's salary was intended to cover a stated 55-hour workweek. Wilson's manager and Stiles' Human Resource manager both told him he was employed for a fixed 55-hour week. Pl. Counter-Statement ¶ 26.

Additionally, because Wilson contemporaneously complained that he should receive overtime (*id.* ¶ 55) there can be no implied agreement to use the FWW. *See Zoltek v. Safelite Glass Corp.*, 884 F. Supp. 283, 286 (N.D. Il. 1995) (no implied agreement "if the employee contemporaneously protests"). *See also Perez v. Radioshack Corp.*, 2005 U.S. Dist. Lexis 33420 (N.D. IL. Dec. 14, 2005) (insufficient evidence whether any of the class members protested the lack of overtime compensation, so the court could not determine whether class members had a clear mutual understanding about the FWW) (*citing Zoltek*).[9]

Accordingly, the court should rule that Wilson was not employed pursuant to the Fluctuating Workweek.

---

[8] *See Cowan v. Treetop Enterprises,* 163 F. Supp. 2d 930 (M.D. Tn. 2001); *Feaser v. City of New York,* 1997 U.S. Dist. LEXIS 18269, *31 (S.D.N.Y. Nov. 18, 1997); *Burgess v. Catawba County,* 805 F. Supp. 341 (W.D.N.C. 1992); *Oliver v. Mercy Medical Ctr.*, 695 F.2d 379 (9th Cir. 1982); *Triple "AAA" Co., Inc. v. Wirtz*, 378 F.2d 884 (10th Cir.), *cert. denied*, 389 U.S. 959 (1967); *Keen v. Mid-Continent Petrol. Corp.*, 63 F. Supp. 120 (N.D. Iowa 1945), *aff'd*, 157 F.2d 310 (8th Cir. 1946) (all rejecting employers' FWW argument where salary was meant to cover a fixed number of hours).

[9] The First Circuit has not decided who bears the burden of proof on the FWW. *See O'Brien v. Town of Agawam,* 350 F. 3d 279, 288 n.17 (1st Cir. 2003).

Point III. Stiles Willfully Violated the FLSA.

Inasmuch as defendant willfully violated the FLSA the statute of limitations is extended to three years from two. The test for willfulness is whether the employer "knew or showed reckless disregard for the matter of whether its conduct" violated the FLSA. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). *See Powers v. Grinnell Corp.*, 915 F.2d 34, 40 (1st Cir. 1990). Despite having knowledge that Wilson was performing an inordinate amount of manual labor, Stiles took no action to determine exactly how much such work he was performing. Pl. Counter-Statement ¶¶ 29, 30, 54 & 56. Nor did Stiles take any steps to limit the amount of manual labor Wilson performed. *Id.* ¶¶ 54 & 56. Thus, Stiles showed reckless disregard for whether its conduct violated the FLSA. Moreover, the fact that Stiles paid other employees overtime (*id.* ¶ 57) shows that Stiles knew the FLSA's overtime requirements. *See Newspapers of New England*, 44 F.3d at 1080 ("the fact that The Monitor paid its employees for all reported overtime demonstrates that it was indeed aware of the FLSA overtime requirements").

Accordingly, the Court should find that Stiles willfully violated the FLSA.

Point IV. Wilson is Entitled to Liquidated Damages.

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and an additional equal amount as liquidated damages.

29 U.S.C. Section 216(b) (emphasis supplied). *See also Baystate Alternative Staffing, Inc. v. Herman*, 163 F.3d 668, 674 (1st Cir. 1998) ("an employer who violates the overtime compensation . . . [provision] is liable to the employee or employees affected in the amount of their unpaid . . . overtime compensation, plus an additional equal amount as liquidated damages.").

The Portal-to-Portal Act, 29 U.S.C. § 260, provides an affirmative defense to liquidated damages for a defendant who proves that it acted in good faith. Defendant bears the burden to prove that it "had reasonable grounds for believing that his act or omission" did not violate the FLSA. 29 U.S.C. § 260. *See Martin v. Coventry Fire District,* 981 F.2d 1358, 1359 (1st Cir. 1992) (FLSA contains a "double damage requirements for all but 'reasonable,' 'good faith' mistakes").

"[T]he employer bears the burden of establishing, by 'plain and substantial" evidence, subjective good faith and objective reasonableness. The burden . . . is a difficult one to meet, however, and double damages are the norm, single damages the exception." *Reich v. Southern New England Telecom.*, 121 F.3d 58, 71 (2d Cir. 1997). *See also Cooper Electric Supply Co.*, 940 F.2d at 908 (same). "Good faith . . . requires more than ignorance of the prevailing law or uncertainty about its developments. It requires that an employer first take active steps to ascertain the dictates of the FLSA and then move to comply with them." *Id.* The lack of "any analysis or . . . inquiry to determine whether employees qualified for an exemption and lack of diligence in determining the applicability of the Act's requirements" mandate an award of liquidated damages. *Id.* at 909.

Here, defendant cannot meet its burden of proving good faith. Plaintiff's Interrogatory No. 13 stated, "Identify all facts upon which you base your affirmative defense that you 'acted in good faith and had reasonable grounds for believing that [your] actions did not violate' the FLSA." Defendant responded, "Plaintiff acted in a management capacity. His primary duty consisted of performing non-manual work directly related to management policies or general business operations of Stiles, or Stiles' customers, and his work required the exercise of discretion and independent judgment."

(A copy of the interrogatories and responses is attached as Pollack Decl. Exhibit J.)[10] Certainly, merely restating the definition of an administrative employee is insufficient to meet the employer's difficult burden.

Defendant's failure to show good faith entitles Wilson to liquidated damages. Even if defendant shows that it acted in good faith, the Court still has discretion to award liquidated damages.

Accordingly, the Court should rule that Wilson is entitled to liquidated damages.

## Conclusion

For the foregoing reasons, plaintiff Furgus Wilson respectfully requests that the Court grant his motion for summary judgment in all respects.

Dated: June 20, 2006

Jeffrey D. Pollack (JP-1409)
Mintz & Gold LLP
470 Park Ave. So., 10th Fl. – North
New York, NY 10016
(212) 696-4848
(212) 696-1231 (facsimile)

Thomas Cronin
Gunning & LaFazia, Inc.
56 Pine St. – 7th Fl.
Providence, RI 02903
(401) 521-6900
(401) 521-6901 (facsimile)

Attorneys for Plaintiff

[10] Defendant's responses do not comply with Local Rule 33 despite repeated requests to defendant to amend its response to conform to the Local Rules.