UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

FURGUS WILSON,

Plaintiff,

Case No. 1:05-cv-00324

v.

Hon. William E. Smith

STILES MACHINERY, INC.

Defendant.

/

**DEFENDANT'S OBJECTION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

With no citations to any relevant record evidence, Wilson argues that he was not exempt because he allegedly spent most of his time performing manual labor. This statement is completely without factual support or legal merit. The record evidence in this case supports the proposition that Wilson spent at least 75 percent of his time engaged in project management. Wilson cited no record evidence to rebut this fact. But more importantly, even if this Court accepts as true this unsupported statement that plaintiff spent that much of his time performing manual labor, that fact alone would not establish non-exempt status. Cases from throughout the country demonstrate that workers who spend even 70 percent or more of their time doing manual labor are still exempt when their primary job duty was the performance of exempt administrative or managerial work.

Similarly without any support from the record, Wilson also claims that his work was not directly related to the policies or general operations of Stiles. This argument is likewise without factual support or legal merit. As the "face of Stiles" on-site with the customer, plaintiff was an on-site coordinator responsible for ensuring the satisfaction of Stiles's customer. Such a pivotal role was essential to both Stiles's ongoing business operations and its customers operations.

Finally, Stiles selectively quotes the record in order to show that he did not exercise independent discretion and judgment. But the evidence in this record belies such an argument. Plaintiff's own admissions establish that he regularly exercised independent discretion and judgment in his role as project manager. Such a vital role

demanded it, and plaintiff could not have done his job without demonstrating independent discretion and judgment.

## ARGUMENT

### A. PLAINTIFF'S PRIMARY DUTY WAS EXEMPT WORK, DESPITE ANY ARGUMENT AS TO THE AMOUNT OF TIME HE SPENT PERFORMING NON-EXEMPT WORK

Plaintiff argues that he spent 70 percent of his time performing manual labor. (Plaintiff Br. at 3.) As an initial matter, plaintiff fails to support this statement with citations to record evidence. Plaintiff relies on what he calls "weekly work reports" to support this claim. But these reports are not record evidence; they are simply documents disclosed during discovery.[1] And more importantly, plaintiff does not even attempt to explain how these documents—which total over 100 pages—support his claim that he spent more than 70 percent of his time doing manual labor. The reports do not distinguish between manual and non-manual labor, and they do not specify how much time plaintiff was spending on certain tasks. Moreover, the reports do not purport to record meetings, supervision, coordination and many other project manager responsibilities undertaken by plaintiff. In fact, even as to the work reported, the documents do not record – and were not intended to record – who actually performed the work. In short, they are useless to a determination of how much time plaintiff was spending on manual labor.

On the other hand, Stiles has submitted record evidence on this point. The customer representatives that plaintiff testified he interacted with the most at Kraftmaid and Monarch submitted affidavits attesting that plaintiff spent no more than 25 percent

[1] Plaintiff's attempt to authenticate these documents by attorney affidavit is unavailing. The attorney does not have personal knowledge regarding the substance of the weekly reports.

of his time working on equipment and the rest undertaking project manager duties that both the FLSA regulations and plaintiff himself acknowledge to be exempt administrative duties.

Importantly, though, this discussion of how much time Wilson spent doing non-manual work is not relevant. Courts throughout the country have consistently held that an employee's primary duty can still be exempt even thought that employee spends 70%, 80%, or even 90% of his time doing manual labor. *See, e.g., Donovan v. Burger King*, 672 F.2d 221 (1st Cir. 1982); *Donovan v. Burger King,* 675 F.2d 516 (2d Cir. 1982); *Murray v. Stuckey's, Inc.*, 939 F.2d 614 (8th Cir. 1991); *Spinden v. GS Roofing Prods. Co.*, 94 F.3d 421, 427; *Rutlin v. Prime Succession, Inc.*, 220 F.3d 737 (6th Cir. 2000).

As explained in Stiles's first brief, the First Circuit has specifically recognized that it does not matter how many hours an employee spends performing manual labor—what matters is the employee's primary, or most important, duty. Plaintiff's brief neither refutes that proposition of law nor contradicts the record evidence discussed in Stiles's first brief showing that everyone involved – Stiles, Stiles's customers and even plaintiff himself – understood his primary duty to be project management. In *Donovan v. Burger King Corp.*, the plaintiffs spent more than fifty percent of their time engaged in non-exempt, routine manual production activities, including making the food and filling orders. *Donovan v. Burger King*, 672 F.2d at 227. The court held that these employees were exempt employees because their primary duty was still exempt managerial work. [2]

[2] Because plaintiff cannot challenge the legal analysis of *Donovan*, he tries to distinguish it by arguing that that case involved the executive, not the administrative, exemption. But what plaintiff ignores is that the primary duty analysis is identical under both exemptions. *Donovan* is therefore binding authority on the

*Id.* Similarly, in *Spinden v. GS Roofing Products Co., Inc.*, the plaintiff spent between 80 and 90 percent of his time doing manual labor. *Spinden v. GS Roofing Prods. Co.*, 94 F.3d 421, 427 (8th Cir. 1996). Nevertheless, the Eighth Circuit recognized that this employee was exempt because the issue is not time spent, but what an employee's primary duty is. *Id.* at 428. The Sixth Circuit reached the same conclusion in *Rutlin v. Prime Succession, Inc.*, 220 F.3d 737 (6th Cir. 2000), holding that an employee could spend most of his time doing manual labor and still be considered exempt.

The same analysis applies in this case. Even if plaintiff were correct that he spent 70 percent of his time doing manual labor, this fact alone does not mean that Wilson's primary duty was not exempt administrative work. As plaintiff himself has acknowledged, his primary duty was undertaking the responsibilities in his job description: managing and coordinating projects on site, handling customer relations, and generally being the face of Stiles on site and bearing the important responsibility of making sure that the project was completed successfully and that the customer was satisfied. The record evidence clearly supports these job duties as plaintiff's primary, or most important, job duties. (*See* Stiles's Br. at Ex. A at pgs. 34-35 (VanLoon Dep.); Ex. B at ¶13 (Hart Aff.); Ex. C at pgs. 104-109, and Dep. Ex. 1 (Wilson Dep.); Ex. D at pgs. 13-15 (LeBlanc Dep.))[3]

---

issue of evaluating a plaintiff's primary duty for purposes of either the executive or the administrative exemption.

[3] Plaintiff cites several cases in an attempt to show that other employees who spent a lot of time doing manual labor were nonexempt employees. But these cases do not hold that *because of* the high percentage of time the employees were nonexempt, they hold that the plaintiffs were nonexempt because their primary duty was something other than administrative duties. *See, e.g., Jarrett v. ERC Props.*, 211 F.3d 1078 (8th Cir. 2000) (finding the primary duties were cleaning toilets, writing receipts, unlocking and locking common rooms according to a schedule, and receiving applications; these duties are not administratively exempt). Many of the cases actually confirm that time percentages alone do not dictate nonexempt status. *See, e.g., Copas v. East Bay Mun. Util. Dist.*, 61 F. Supp. 2d 1017 (N.D. Cal. 1999)

**B. PLAINTIFF'S WORK DIRECTLY RELATED TO THE MANGEMENT POLICIES OR GENERAL OPERATIONS OF STILES OR ITS CUSTOMERS**

Wilson also argues that he was not exempt because his work was not directly related to the management policies or general operations of Stiles or its customers. And again, plaintiff makes this argument without a single relevant citation to record evidence. This argument should be rejected for this reason alone.

An examination of the record, however, reveals that this requirement is easily satisfied. According to the regulations, "directly related" refers to work that assists with "running or servicing of the business." 29 C.F.R. § 541.201(a) (2005). This work includes personnel management, quality control, research, and safety. 29 C.F.R. § 541.201(b) (2005). In addition to these activities, the element is met by employees who "perform work of substantial importance to the management or operation of the business of his employer or his employer's customers." 29 C.F.R. § 541.201(b) (2005). Moreover, the regulations also explain that "major assignments," like those that Plaintiff was in charge of–special projects–are those projects that are closely related to business operations. The regulations read:

> Employees whose work is "directly related" to management policies or to general business operations include those whose work affects policy or whose responsibility it is to execute or carry it out. The phrase also includes a wide variety of persons who either carry out major assignments in conducting operations of the business, or whose work affects business operations to a substantial degree, even though their assignments are tasks related to the operation of a particular segment of the business.

29 C.F.R. § 541.205(c) (2003).

---

(finding the plaintiff to be exempt, and citing *Spinden, supra*, for the proposition that an employee can spend 80-90 percent of his time doing manual labor and still be exempt).

Courts routinely find that job duties like plaintiff's, including planning, advising, and assisting customers, are job duties that are directly related to the employer's general business operations. For instance, in *Kennedy v. Commonwealth Edison Co.*, the Seventh Circuit determined that work planners who were responsible for planning and advising the management and who evaluated possible repairs, inspected equipment, and decided whether the equipment needs to be modified performed work directly related to their employer's operations. *Kennedy v. Commonwealth Edison Co.,* 410 F.3d 365, 373 (7th Cir. 2005). When examining "lead planners," workers that guided other employees to make sure that implementation of work plans went efficiently, the court ruled that these workers also met the duties test because "managing others is by definition of substantial importance to the management ... of a business." *Id*. citing 29 C.F.R. § 541.205 (c)(1).

In another similar case, the plaintiff engaged in advising management, planning, and promoting sales by finding solutions to his employer's problems. *Bagwell v. Florida Broadband, LLC*, 385 F. Supp. 2d 1316, 1324 (S.D. Fla. 2005). The court noted that the plaintiff worked at a "responsible level and performed work directly related to management policies or the operation of [the employer]." *Id*. Because of all of these duties, problem solving, advising management, planning and promoting sales, the court concluded that plaintiff's work was "of substantial importance to [the employer]." *Id*.

In yet another case, the Sixth Circuit considered the exempt status of an employee seeking overtime. *Lutz v. Ameritech Corp.*, 208 F.3d 214 (6th Cir. 2000). The employee worked as a field engineer and was responsible for providing access to his employer's computer network. *Id*. at 216. As part of these duties, plaintiff was

responsible for designing and overseeing a plan to provide this access. He was also expected to take client requests, consult with the client, and try to define client needs. The employer considered the plaintiff to be a "project manager" that implemented solutions to these problems, "accountable from end to end to insure that that network installation premise is up and running correctly." The court determined that these duties were "directly related to the general business operations of [the employer]." *Id*.

Plaintiff's duties were nearly identical to the ones analyzed in these cases. Plaintiff was in regular contact with customers and was Stiles's on-site representative for all purposes. (Stiles Br. at Ex. C at pgs. at 104-109, and Dep. Ex. 1 (Wilson Dep.); Ex. E at ¶¶ 5-6 (Guadagnoli Aff.); Ex. F at ¶¶ 5-6 (Anderson Aff.).) In this role, plaintiff coordinated project meetings with the customer and kept the customer informed of his responsibilities, installation schedule, and whatever additional information could be useful to maintain a positive and proactive customer relationship. (Stiles Br. at Ex. C at 104-109 and Dep. Ex. 1 (Wilson Dep.); Ex 1 at pg. 34 (VanLoon Dep.).) Plaintiff's "commissioning" of machine lines was an overall verification that the machine line functions properly and produces the appropriate finished products. (Stiles Br. at Ex. B. at ¶ 9 (Hart Aff.); Ex. G at ¶ 8 (VanLoon Aff.).) Plaintiff was also engaged in problem solving, advising management, and planning. (*Id*.)

Just as in the cases above, these duties are directly related to Stiles's and its customer's business operations. If plaintiff were to fail in his role, both Stiles and its customer stood to lose money and productivity. Accordingly, the second prong of the administrative exemption test is fulfilled as Wilson's primary duty consisted of non-

manual work directly related to Stiles's and/or its customer's general business operations.

### C. PLAINTIFF EXERCISED DISCRETION AND INDEPENDENT JUDGMENT

Plaintiff attempts to defeat the final prong of the administrative exemption by selectively quoting portions of the record. Plaintiff cites only three examples of his discretion and independent judgment, namely, (1) the fact that he solved problems with the machinery, (2) the fact that he prepared reports, and (3) the fact that he decided when to start and stop working. Plaintiff then tries to defeat his straw-man argument by arguing that these duties by themselves are "simply too insignificant" to demonstrate discretion and independent judgment.

But Stiles has cited much more record evidence supporting plaintiff's discretion and independent judgment. For example, the record clearly shows the following:

- Plaintiff was responsible for developing, coordinating, and implementing an installation timeline with input from the customer, Stiles's sales engineers, relevant product managers, and service management. (Stiles's Br. at Ex. C at pg. 106 (Wilson Dep.).)

- Plaintiff developed a basic plan for executing and controlling the project, including establishment of a chain of command. (Stiles's Br. at Ex. C at pgs. 104-109 and Dep. Ex. 1 (Wilson Dep.).)[4]

- Plaintiff would develop manpower lists that reconciled with the installation timeline. (Stiles's Br. at Ex. C at pgs. 104-109 and Dep. Ex. 1 (Wilson Dep.).)

- Plaintiff's installation duties included studying contract documents to understand the equipment and relevant contractual obligations. (Stiles's Br. at Ex. C at pgs. 104-109 and Dep. Ex. 1 (Wilson Dep.).)

---

[4] In his counter-statement of undisputed facts, Plaintiff claims that these facts are not supported by this citation to the record. This is not true. In this portion of the deposition (pages 104-109), Wilson was asked about his job description. With a few minor exceptions, Wilson agreed that he did everything in his job description. (Dep. Ex. 1.) The job description supports most, if not all, of these undisputed facts, along with these other citations to the record.

- Plaintiff coordinated a team of service technicians that was tasked to solve problems during the installation process and initial operating period of the equipment. (Stiles's Br. at Ex. C at pgs. 28-29 (Wilson Dep.).)

- Plaintiff was responsible for reviewing the personnel requirements and moving personnel in or out of the project as necessary. (Stiles's Br. at Ex. C at pg. 105 and Dep. Ex. 1 (Wilson Dep.).)

- Plaintiff stated that he was responsible for supervising technicians in his work experience as Project Manager for Stiles. (Stiles's Br. at Ex. C at Dep. Ex. 3 (Wilson Dep.).)

- While on-site, Plaintiff was the primary contact between the customer, Stiles, and the installation personnel. (Stiles's Br. at Ex. C at pgs. 104-109 and Dep. Ex. 1 (Wilson Dep.).)

- Plaintiff was in charge of customer support at Monarch and KraftMaid. (Stiles's Br. at Ex. B at ¶ 12 (Hart Aff.); Ex. G at ¶ 11 (VanLoon Aff.).)

- In this role, Plaintiff coordinated project meetings with the customer. (Stiles's Br. at Ex. C at pgs. 104 (Wilson Dep.).) At these meetings, plaintiff acted as a Stiles management representative and kept the customer informed of his responsibilities, installation schedule and whatever additional information could be useful to maintain a positive and proactive customer relationship (Stiles's Br. at Ex. C at pgs. 104-109 and Dep. Ex. 1 (Wilson Dep.); Ex. A at pg. 34 (VanLoon Dep.).)

All of these tasks, taken together, show that plaintiff exercised discretion and independent judgment. *See Reich v. John Alden Life Insurance Co.*, 126 F.3d 1, 14 (1st Cir. 1997) (holding that marketing representatives exercise discretion and independent judgment by relying on their own knowledge and making decisions on a day-to-day basis that affects customers); *Kennedy v. Commonwealth Edison Co.,* 410 F.3d 365, 373 (7th Cir. 2005) (holding that employees that routinely contact management, make recommendations about projects, schedules, and personnel, exercise discretion and independent judgment); *Lutz v. Ameritech Corp.*, No. 98-2367, 208 F.3d 214 (6th Cir. February 23, 2000) (based in part on deposition and job

description, employee who assesses the needs of clients, develops installation plans, and coordinates the installation exercised discretion and independent judgment); *Koppinger v. American Interiors, Inc.*, 295 F.Supp.2d 797, 805-806 (N.D. Ohio 2003) (holding that an employee's job duties of evaluating and/or fixing customer problems constitute the exercise of discretion and independent judgment).

## D. PLAINTIFF WAS COMPENSATED BASED ON A FLUCTUATING WORK WEEK

Moving away from liability and on to damages, plaintiff next argues that he was compensated based on a "fixed work week" and not a "fluctuating work week." The fixed work week covers employees who receive a fixed salary that is intended to compensate a specific number of hours worked (for example, $1,000 for 40 hours). 29 C.F.R. § 778.113 (a). A fluctuating work week, on the other hand, is when an employer pays the employee to get the job done, regardless of how many hours it takes. 29 C.F.R. § 778.114. Under the fluctuating-work-week scenario, if a plaintiff is entitled to overtime compensation under the FLSA, then the employee receives overtime compensation at only half his or her regular rate (instead of the usual one-and-a-half times his or her regular rate, which would be available under the fixed-work-week scenario). *Id.*

There are three relevant conditions which are to be satisfied before the fluctuating workweek applies:

(1) The employee's hours must fluctuate from week to week;
(2) The employee must receive a fixed salary that does not vary with the number of hours worked during the week (excluding overtime premiums);

(3) The employer and employee must share a "clear mutual understanding" that the employer will pay that fixed salary regardless of the number of hours worked.

29 C.F. R. § 778.114(a)

Plaintiff bears the burden of proof on the issue of whether or not the fluctuating work week method applies. *Samson v. Apollo Resources, Inc.*, 242 F.3d 629 (5th Cir. 2001).

Plaintiff does not dispute that his hours fluctuated from week; therefore the first element is clearly satisfied. (Dep. At 74-77.) Plaintiff also does not dispute that he received a fixed salary regardless of the number of hours worked in a week. (Wilson Dep. at 78.) Plaintiff received the same paycheck regardless of whether he worked 35 or 70 hours in a given week. Accordingly, the second element is established.

The third and final element is a clear mutual understanding that the employer will pay a fixed salary regardless of the number of hours worked. This element is also satisfied, despite plaintiff's claims that there was no implied agreement or understanding. Plaintiff's argument is defeated by the simple fact that the parties' behavior for seven years reflects a clear mutual understanding. Stiles paid Wilson the same amount regardless of the hours worked by Wilson. (Wilson Dep. at 78.) Each time Wilson received the exact same weekly compensation for 35, 40, 45, 50, 55, and 60 hours, Wilson understood that he was being compensated under the fluctuating work week method.

The First Circuit has addressed this very issue under nearly identical facts. *Valerio v. Putnam Associates, Inc.*, 173 F.3d 35 (1st Cir. 1999). There, like here the record established that the plaintiff understood that the hours of the job varied from week to week and that no overtime would be paid for more than 40 yours. (Wilson Dep.

at 151-52). The First Circuit said that this evidence alone satisfied the "clear mutual understanding" requirement.

But the First Circuit went on to indicate that the parties' conduct over the years was equally significant:

> Additionally, the evidence of the parties' post-hiring conduct reinforces Putnam's contention that Valerio understood her salary was to compensate her for fluctuating hours. During the first eleven months of her employment, Valerio routinely worked without complaint more than 40 hours per week without extra pay. See *Mayhew v. Wells,* 125 F.3d 216, 218 (4th Cir. 1997) ("The existence of [a clear mutual understanding] may be based on the implied terms of one's employment agreement if it is clear from the employee's action that he or she understood the payment plan in spite of after-the-fact verbal contentions otherwise").

The evidence here shows that both Stiles and plaintiff clearly understood that as a project manager working at a customer's job site plaintiff's salary was intended to cover however many hours plaintiff worked. Plaintiff testified in his deposition that his daily work hours depended entirely on how much work there was to do: "the job dictated when I stopped working every day. It depends on what was going on.... It all varied and all depended." (Wilson Dep. At 151.) How long he worked was not dictated to him by anyone else: "Q: And you'd use your own discretion to determine when you start and stop, depending on what the situation was, right? A: That's correct." (*Id.* At 152) [5] Paychecks satisfy the requirement of a clear mutual understanding that salary is compensation for the hours worked each week, whatever their number. *See Davis v.*

[5] Plaintiff concedes that this was true throughout his employment at Stiles except during the first few weeks back in 1997 when he was in training in the home office (Wilson Dep. At 152.) It was there, he testified, that he was told he should work 55 hours a week (a fact disputed by the people he said told him that, see Corner Affidavit, attached as Exhibit 1), but the testimony about 55 hours is irrelevant in any event because it does not apply to the period of time at issue in this case. For that period, plaintiff's testimony about fluctuating hours controls.

*Wake County*, 142 F.3d 712, 716 (4th Cir.1998). As stated by the Fourth Circuit, plaintiffs "received a regular lesson-in the form of their paychecks-about how the fluctuating workweek plan operates." *Id.* at 717. Likewise, Wilson received a regular lesson for seven years in the form of his paychecks about how the fluctuating workweek plan operates.

**E. STILES IS NOT LIABLE, BUT EVEN IF IT WERE, ANY VIOLATION WAS NOT WILLFUL**

As a final argument, plaintiff argues that Stiles's alleged violations were willful. This allegation is not supported by the record. Plaintiff bears the burden of proof on this issue. *Adams v. United States*, 350 F.3d 1216, 1229 (Fed. Cir. 2003). This burden is simply not satisfied by merely pointing out that Stiles knew plaintiff occasionally performed manual labor. Nor does plaintiff establish reckless disregard by pointing out the fact that Stiles complied with the FLSA with respect to other employees. The only thing that shows is that Stiles does not have reckless disregard for the FLSA but instead attempts to comply with the Act when it applies.

Stiles did not willfully violate the FLSA by classifying plaintiff as an exempt administrative employee. Stiles cannot be said to have willfully violated the FLSA when the DOL regulations specifically list project managers as an example of exempt administrators. 29 C.F.R. § 541.203(c). Further, the case law cited in Stiles's brief in support of its Motion For Summary Judgment supports its classification. The Supreme Court has explained that an employer's violation of the FLSA is only willful if the employer knew that its actions violated the statute or showed a reckless disregard for whether its conduct was prohibited by the statute. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Thus, even if an employer acts unreasonably, but does not

act recklessly, in determining its obligations under the FLSA, the resulting actions are not willful in nature. *Richland Shoe*, 486 U.S. at 135 (rejecting DOL's proposed willfulness standard, i.e., that willfulness occurred when employer acted without reasonable basis for believing it was complying with the Act); *Lopez v. Corporacion Azucarera,* 938 F.2d 1510, 1515 (1st Cir. 1991) (FLSA violations not willful based on unreasonableness alone). Under this standard, willfulness requires more than mere negligence. *Richland Shoe*, 486 U.S. at 133 (willful conduct refers to acts that are not merely negligent); *Reich v. Newspapers of New England*, 44 F.3d 1060 (1st Cir. 1995) Moreover, mere awareness of the FLSA's requirements is insufficient to prove willfulness. *Reich*, 44 F.3d at 1080.

Stiles, in relying on a DOL regulation and extensive case law, certainly acted reasonably in determining its legal obligation under the FLSA. Stiles affirmatively ascertained and intended to follow the requirements of the FLSA regarding the classification of plaintiff's position. (*Callahan Affidavit, at ¶¶ 3-5*). An employer who makes efforts to comply with the requirements of the FLSA but fails to do so because of mistaken interpretations of the law does not commit a willful violation. *See Reich v. Tiller Helicopter Services.*, 8 F.3d 1018, 1036 (6th Cir. 1993); *see also Reich v. Gateway Press*, 13 F.3d 685, 702 (3d Cir. 1994). Plaintiff points to nothing that comes close to meeting his burden of proving willfulness.

## F. PLAINTIFF IS NOT ENTITLED TO LIQUIDATED DAMAGES

Plaintiff erroneously claims that he is entitled to liquidated damages. As a preliminary matter, Stiles did not violate the FLSA, and as such, plaintiff is not entitled to any damages, let alone liquidated damages. Further, if an employer demonstrates both

good faith and reasonable grounds for an incorrect classification, a court may exercise its discretion to limit or deny liquidated damages under the FLSA. 29 U.S.C. § 260. To satisfy the good faith defense to liquidated damages, the employer must act as a reasonably prudent person would have acted under the same circumstances and have an honest intention to follow the dictates of the FLSA. *Reich v. Newspapers of New England*, 44 F.3d 1060 (1st Cir. 1995); *Bratt v. County of Los Angeles*, 912 F.2d 1066, 1072 (9th Cir. 1990).

In *Bratt*, the Court held that despite finding that employees who worked as deputy probation officers and treatment counselors were not administrative employees, the employees were not entitled to liquidated damages. *Bratt* at 1072. The Court first found that the employer acted in good faith because the evidence showed an honest intention to follow the FLSA, did not attempt to evade the mandates of the act, and did not have "ticky-tack" reasons for classifying the employees as exempt. *Id*. The Court also stated that the employer had reasonable grounds for classifying the employees as exempt because those employees were not specifically addressed under the DOL regulations and because it was reasonable to think, based on job duties, that the employees were exempt. *Id*.

The same analysis was used by the Seventh Circuit in *Adkins v. Mid-American Growers, Inc.*, 167 F.3d 335 (7th Cir. 1999), which held that liquidated damages are appropriate only if the employer had no reasonable basis for taking the position he did.

In this case, Stiles certainly acted in good faith and had reasonable grounds for classifying plaintiff as an exempt administrative employee. Stiles satisfies the good faith prong of the test because it had investigated and intended to follow the FLSA, it has not

attempted to evade the FLSA, and based on the overwhelming authority cited above, it certainly did not have "ticky-tack" reasons for believing plaintiff was an exempt administrative employee. Stiles certainly had reasonable grounds as it relied on a DOL regulation that specifically lists project managers as an example of exempt administrative employees. 29 C.F.R. § 541.203(c). Stiles believed plaintiff was an exempt employee. (Stiles Br. at Ex. B. at ¶ 15 (Hart Aff.); Ex. G at ¶ 15 (VanLoon Aff.); Affidavit of Michael Callahan at ¶ 6, attached as Exhibit 2.) Moreover, the review of the FLSA and its applicability to plaintiff's position was done by Stiles's in-house counsel who was familiar with the Act. Based on the case law and regulations, Stiles acted as any reasonably prudent employer would have acted under the circumstances. Accordingly, plaintiff is not entitled to liquidated damages.

## CONCLUSION

Stiles's motion for summary judgment should be granted, and costs should be awarded as provided in Federal Rule 54(e). Plaintiff's motion for summary judgment should be denied.

STILES MACHINERY, INC.
By its Attorneys,

Dated: July 5, 2006

Michael F. Kraemer (#6751)
HINCKLEY, ALLEN & SNYDER LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (facsimile)

Paul T. Sorensen (Pro Hac Vice)
WARNER, NORCROSS & JUDD LLP
900 Fifth Third Center
111 Lyon Street, N.W.
Grand Rapids, MI 49503-2487
(616) 752-2000
(616) 222-2135 (facsimile)

**CERTIFICATION**

Thomas J. Cronin, Esq.
Gunning & LaFazia, Inc.
56 Pine Street – 7th Floor
Providence, Rhode Island 02903

Jeffrey D. Pollack, Esq.
Mintz & Gold LLP
470 Park Avenue So. – 10th Floor – North
New York, New York 10016

I certify that I mailed a copy of the within Memorandum of Law to counsel of record, as set forth above, on July 5, 2006.